**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**JAMES MELVIN DEWITT,**

        **Plaintiff,**

**vs.**                           **CIVIL ACTION NO. 1:20-CV-00309**

**MCDOWELL COUNTY BOARD
OF EDUCATION,**

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is ***Defendant McDowell County Board of Education's Motion for Summary Judgment*** and supporting ***Memorandum*** (ECF Nos. 28, 29) filed on March 30, 2021. By Administrative Order entered on May 4, 2020, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3) Having examined the Complaint and additional pleadings of record and considered the pertinent legal authority, the undersigned has concluded that the ***Motion for Summary Judgment*** should be **GRANTED** for the reasons stated *infra*:

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that he is African American and had been employed by Defendant for four years as an instructor of Law and Public Safety as well as the Head Basketball Coach for Mt. View Middle and Grade School until he was forced to resign on July 4, 2018. Plaintiff alleges that during his employment, racial animus against African Americans was rampant and encouraged by Defendant, because it failed to stop the conduct; Plaintiff further alleges that African American

1

employees were under stricter scrutiny than similarly situated white employees, and also that African American employees were disciplined and reprimanded for minor mistakes whereas the same behavior by similarly situated white employees was largely ignored.

Plaintiff states that in April 2018 he was called to a meeting with the superintendent, vice superintendent and principal regarding alleged text messages between Plaintiff and a female student. Plaintiff attempted to clear up the matter, however, he was suspended for five days; Plaintiff alleges that in his Law and Public Safety class, he has students call or text him to advise when they will not be in class, a state mandate for structured work environments in class. Plaintiff alleges that there was a hearing before the Board, however, he had heard rumors that his replacement was a Board member's son and felt he would not receive a fair hearing and instead resigned in order to maintain his benefits.[1]

In addition to creating a hostile work environment through racial discrimination, Plaintiff alleges that Defendant defamed him by publishing statements that Plaintiff was fired for sharing inappropriate text messages with a student. Defendant shared these statements with potential employers, which has injured Plaintiff's reputation and ability to obtain employment. This has caused Plaintiff losses in future income, earning capacity, as well as mental anguish.

Plaintiff also alleges that Defendant committed the tort of intentional infliction of emotional distress, as he suffered and still suffers from severe emotional distress due to Defendant's actions. Despite Plaintiff's good faith complaints of racial harassment and discrimination, Defendant condoned the behavior and ignored Plaintiff's complaints; further, in retaliation to Plaintiff's good faith complaints, Defendant subjected him to greater scrutiny than

---

[1] Plaintiff attached an Exhibit to his Complaint, a Notice of Right to Sue issued by the West Virginia Human Rights Commission, dated February 19, 2020. (ECF No. 2-1)

2

his white peers as well as unwarranted discipline. When Plaintiff was due to receive a promotion, Defendant fired him instead.

Plaintiff asks for compensation for his loss of reputation and character, for his past and future mental anguish as well as his future loss of earning capacity.

## **PROCEDURAL HISTORY**

On April 30, 2020, Plaintiff, acting *pro se*[2], filed his Application to Proceed Without Prepayment of Fees and Costs and his Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983. (ECF Nos. 1, 2)

On May 4, 2020, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, directed the Clerk to issue a summons for the Defendant, and directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaint upon the Defendant. (ECF No. 4)

On June 25, 2020, Defendant filed its Answer.[3] (ECF No. 7)

On June 26, 2020, the undersigned entered a Scheduling Order. (ECF No. 8)

On October 15, 2020, Defendant moved this Court to dismiss Plaintiff's Complaint in its entirety. (ECF No. 10) In accordance with the Roseboro notice issued by the undersigned (ECF No. 12), on October 30, 2020, Plaintiff filed his Response in opposition to Defendant's Motion to Dismiss (ECF No. 13), to which Defendant filed its Reply (ECF No. 14)

Following entry of an Amended Scheduling Order (ECF No. 15) to allow for additional

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).
[3] Defendant attached an Exhibit to its Answer, a letter dated April 17, 2018 wherein it lists the reasons for Plaintiff's suspension and that it intended to recommend Plaintiff's termination. (ECF No. 7-1)

time to conduct discovery[4], after having deposed Plaintiff, on March 30, 2021, Defendant filed its Motion for Summary Judgment and supporting Memorandum (ECF Nos. 28, 29). In support of its Motion, Defendant attached several Exhibits: (1) letters dated June 15, 2015 and July 20, 2015 from Defendant to Plaintiff confirming his appointment to Career and Technology Center – Criminal Justice and his transfer from Kimball Elementary – PE/Health K-5 – P-K-33 to Career & Technology Center – Law Enforcement/Criminal Justice – P-CT-16, respectively; (2)-(4) a copy of the Title IX Investigation from April 2018 concerning student allegations against Plaintiff, including notes from interviews by school counselor(s) with students, student hand-written statements, and screenshots of text messages between Plaintiff and student; (5) excerpts from Plaintiff's deposition transcript taken on February 17, 2021; (6) a copy of Plaintiff's Response to Defendant's First Set of Interrogatories, Requests for Production and Requests for Admission to Plaintiff; (7) the affidavit of Nelson Kent Spencer, former Superintendent of the McDowell County Board of Education; (8) a copy of Defendant's "Expected Behavior in Safe and Supportive Schools", Policy 11-028; and (9) the affidavit of Dr. Ingrida Barker, Associate Superintendent and Title IX Officer of the McDowell County Board of Education. (ECF Nos. 28-1 through 28-9, respectively)

Pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), the Court notified Plaintiff of his right to file a response to Defendant's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendant. (ECF

---

[4] On January 12, 2021, Defendant filed a Motion for an Order (1) Deeming Defendant's First Set of Requests for Admissions to Plaintiff Admitted, (2) Striking Plaintiff's Responses (of December 31, 2020) to Defendant's Request for Admission, and (3) Striking Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admissions to Defendant (ECF No. 19); on February 12, 2021, Defendant filed its Notice of Partial Withdrawal of this Motion (ECF No. 27).

No. 30)[5] On April 16, 2021, Plaintiff has filed his ***Response*** to Defendant's Motion (ECF No. 32), to which, on April 27, 2021, Defendant filed its ***Reply*** (ECF No. 33)[6]. Consequently, this matter is fully briefed and ready for resolution.

### Defendant's Argument in Support of Motion for Summary Judgment

Defendant contends that Plaintiff cannot prove any set of facts to support any claims for discrimination, noting that Plaintiff was subject to disciplinary action solely because of his inappropriate conduct with a female student. Defendant received a complaint from a student that Plaintiff made inappropriate sexual comments to her, causing her to feel uncomfortable and fearful to be around him; Defendant asserts that the student's claims were corroborated by other student's and teacher's written statements, in addition to hundreds of text messages Plaintiff admitted to sending the female student. Because of this, Defendant had no choice but to suspend Plaintiff and to pursue a hearing where his termination of employment would be considered. Instead, Plaintiff submitted his voluntary resignation prior to the scheduled hearing.

Defendant further argues that Plaintiff's claim of hostile work environment fails as a matter of law as there is no evidence that he suffered from severe or pervasive treatment based upon his race. Defendant asserts that Plaintiff has only identified a "*one single* comment that was made to him about race, and in that instance, the subject matter was concerning his inappropriate messages with a student, and did not have any racist or derogatory connotation." (ECF No. 29 at 10) (emphasis in original) Plaintiff has also claimed two other incidents, and those incidents did not

---

[5] Plaintiff subsequently requested a five-day extension in which to file a response to Defendant's Motion, which the Court granted. (ECF No. 31)
[6] In support of its Reply, Defendant attached two exhibits: a copy of Defendant's Answers to Plaintiff's First Set of Interrogatories, Requests for Production and Requests for Admissions (ECF No. 33-1); and the Affidavit of Tonya White, Defendant's Personnel Director (ECF No. 33-2).

even involve Plaintiff, however, he attempts to use them to show the alleged treatment of other teachers. Significantly, the other two incidents have nothing to do with the evidence showing Plaintiff's sexual harassment of a female student.

With regard to Plaintiff's claim for defamation, Defendant argues that this claim relates to the inappropriate text messages Plaintiff sent to the female student causing her to feel uncomfortable; this was clearly a matter of public concern, given Plaintiff's employment as a teacher, especially for potential employers who would hire Plaintiff to be around underage girls. Defendant asserts that not only has Plaintiff failed to allege that Defendant acted with actual malice, Plaintiff has also not alleged that this disclosed information to a third party had no reasonable right to know. Plaintiff also does not allege that the statements were non-privileged. Plaintiff has merely conclusively stated that the allegations in the proposed termination letter were defamatory because the Department of Health and Human Services ultimately found no sexual assault occurred. Defendant maintains that the statements in the letter were true as to why Plaintiff's employment was suspended. Defendant would have been in violation of Title IX had it allowed Plaintiff's conduct to continue.

Finally, Defendant asserts that Plaintiff's claim for intentional infliction of emotional distress is preempted by the West Virginia Workers' Compensation Act, which affords Defendant, its employees, and its agents with immunity from liability for alleged workplace injuries. Additionally, Defendant contends that Plaintiff neither alleges any facts that would provide any exception to the immunity Defendant enjoys through this Act, nor does he allege Defendant's conduct falls within the legal framework that supports such a claim. Defendant states that Plaintiff's alleged emotional distress was due to his own misconduct, and Defendant acted in

6

accordance with the law and duty to provide a safe school free from sexually harassing teachers.

In light of the foregoing, Defendant is entitled to summary judgment on all counts.

### Plaintiff's Response in Opposition

Plaintiff argues that his allegations have merit and asks this Court to deny Defendant's Motion. Plaintiff admits he was a physical education teacher at Kimball Elementary School and then was employed as a criminal justice teacher at the Career and Technology Center as provided in Defendant's exhibit (ECF No. 28-1). Plaintiff admits that the text messages between him and a student were true and accurate (ECF Nos. 28-2 at 11-39, 28-3, 28-4), but believes these messages were taken out of context, and will subpoena the student to testify at trial to provide an explanation.

Regarding his discrimination claim, Plaintiff "understands that Defendant had no choice but to suspend him initially after the student complaint", but asserts that despite scheduling a hearing on the matter, Defendant had already hired Plaintiff's replacement. (ECF No. 32 at 3) Plaintiff states that " 'this conduct' signifies there was adverse conduct on the part of the [Defendant]" which is illustrated by a young Caucasian female who alleged being uncomfortable around an African American male, with text messages being taken out of context, and the female student admitted to lying. (Id. at 3-4) Plaintiff concedes that other incidents of racial discrimination within the school systems do not relate to him, but demonstrate that Defendant "has a habit of treating African Americans differently from their Caucasian counterparts." (Id. at 4)

Plaintiff contends he can prove facts to support his defamation claim, and asserts that Defendant did not report the truth. Plaintiff states that he resigned from his position, and not terminated for inappropriate conduct. Nevertheless, Plaintiff argues that the text messages can be explained, and that some were even initiated by the student herself. Plaintiff intends to call the

student as a witness who will testify that her complaints to Defendant were false, and that she intended to hurt Plaintiff.

Regarding his claim of intentional infliction of emotional distress, Plaintiff argues that it would be unfair to deny his day in court; he had to resign to protect his benefits and he wants this opportunity to right the wrongs made against him and to clear his name. Plaintiff asserts he should be allowed to plead his claim for deliberate intention brought against him by Defendant.

**Defendant's Reply**

Defendant asserts that Plaintiff's Response fails to dispute the material facts as well as the legal principles supporting Defendant's Motion. Additionally, Defendant argues that many of the "facts" cited by Plaintiff are misrepresentations, untrue or based on speculation, but nevertheless fail to defeat Defendant's Motion.[7] Plaintiff's suspension and resignation were based solely on his own conduct and he has shown no evidence of misconduct on the part of Defendant. Further, Plaintiff's claim for intentional infliction of emotional distress still fails as a matter of law because he has only asserted a mental injury, which cannot give rise to deliberate intention claims. Because Plaintiff cannot prove he suffered from any form of racial discrimination, Defendant's Motion should be granted.

**THE STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's

---

[7] For example: (1) Plaintiff has alleged that prior to his resignation, Defendant had already hired his replacement; Defendant has asserted that no one was hired prior to Plaintiff's resignation, and not until over a month after Plaintiff had resigned, as all hired employees must be approved by the Board pursuant to State law; and (2) although Plaintiff indicates that the female student was lying, Defendant asserts there is no evidence of this in the record.

claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure provides:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Accordingly, the undersigned finds that the Exhibits attached to Plaintiff's pleadings as well as the

Defendant's pleadings may be properly considered for purposes of a motion for summary judgment.

## **DISCUSSION**

As an initial matter, there are certain material facts that are not in dispute:

1. Plaintiff had been employed as a teacher by Defendant since 2014 until his resignation in 2018;

2. Prior to Plaintiff's resignation, in April 2018, a female student made a complaint about him making inappropriate sexual comments to her;

3. An investigation into the matter was initiated in April 2018 following Defendant's receipt of the student's complaint;

4. During the investigation, it became apparent that the female student and Plaintiff exchanged text messages;

5. Defendant initially suspended Plaintiff as a result of the female student's complaint;

6. Defendant scheduled a hearing as to whether Plaintiff should be terminated based on the female student's complaint; and

7. Plaintiff resigned prior to the hearing.

### **Proving Discrimination Claims Under Title VII**

To prove a discrimination claim under Title VII, a plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's protected status; (3) which is sufficiently severe or pervasive to alter [his] conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 328 (4th Cir. 2018) (internal citation omitted). As noted *supra*, while Plaintiff argues that Defendant

initiated disciplinary proceedings against him on account of his race, the undisputed material facts demonstrate that Plaintiff's race had nothing to do with Defendant's actions – this alleged "unwelcome conduct" was based ***entirely*** upon receipt of a complaint of inappropriate conduct by a female student of Plaintiff's. Significantly, Plaintiff admits that the text messages between the female student and himself "were true and accurate" (ECF No. 32 at 2). Further, while Plaintiff "understands" Defendant had no choice but to suspend him following receipt of the student's complaint (Id. at 3), Plaintiff contends that Defendant had already hired his replacement, thus causing him to believe he would not have a fair hearing. However, Plaintiff's speculation does nothing to further his claim of racial discrimination.

Moreover, although Plaintiff conclusively suggests that Defendant has a "habit" of treating African American employees differently, or more adversely, than their Caucasian peers, even construing Plaintiff's allegations under the most liberal construction fails to demonstrate that Defendant's alleged misconduct was "sufficiently continuous" or "pervasive" to rise to actionable levels. See Shields v. Federal Express Corp., 120 Fed. App'x. 956, 961 (4th Cir. 2005); Bannerman v. Potter, 2002 WL 32509029, at *8 (S.D.W. Va. Sept. 30, 2002) (Copenhaver, J.) (defendant entitled to summary judgment on plaintiff's claim of hostile work environment where objectionable behavior was not actionable because there was no evidence that the incident was part of a longstanding pattern of hostile and intimidating conduct); Fairmont Specialty Serv. v. West Va. Human Rights Comm'n, 206 W. Va. 86, 96, 522 S.E.2d 180, 190 (1999) (holding that "[m]ore than a few isolated incidents" are required). It is also significant that despite the other incidents Plaintiff has alleged in support of his argument that African American employees are treated differently, there also appears to be no dispute that the other incidents are wholly unrelated

and irrelevant to Plaintiff's particular situation.

In short, Defendant has sufficiently, if not conclusively, coupled with Plaintiff's concession as to the accuracy and truth of the text messages, demonstrated a non-discriminatory reason for suspending Plaintiff. See Holland v. Washington Homes, Inc., 487 F.3d 208 (4th Cir. 2007) (summary judgment granted to defendant employer where it demonstrated a legitimate, non-discriminatory reason for adverse employment action).

### Proving Defamation Claims

As noted by the parties, the essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury. Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 703, 320 S.E.2d 70, 74 (1983). As further noted by Defendant (ECF No. 29 at 11), privilege and truth, precludes all liability once established. Id. As an essential element of a defamation claim, the plaintiff must demonstrate that the defendant made false and defamatorystatements "to a third party who did not have a reasonable right to know." Belcher v. Wal-Mart Stores, Inc., 211 W. Va. 712, 720, 568 S.E.2d 19, 27 (2002).

Moreover, qualified privileges as against liability for defamation are based upon public policy that it is essential that true information be given whenever it is reasonably necessary for protection of one's own interests, the interests of third persons, or certain interests of the public. Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 320 S.E.2d 70 (1983). "A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest

12

in the subject matter." Id. Qualified privilege to publish defamatory statements may be defeatedby showing of actual malice. Id. Some examples of the types of situations in which a qualified privilege has been recognized include (1) the publication of defamatory material for the protection or advancement of the defendant's own legitimate interests; (2) the publication of defamatory material for the protection of the legitimate interests of others; (3) where the communication between the publisher and the recipient is designed to promote a mutual interest; (4) where the communication is made to one discharged with the performance of a public duty; (5) reports of public proceedings; and (6) fair comment on matters of public concern.  Id.

The Fourth Circuit has previously found that "the public undoubtedly has a strong interest in the classroom conduct, or misconduct as the case may be, of . . . school teachers." Hugger v. Rutherford Inst., 94 Fed. Appx. 162, 167 (4th Cir. 2004).

Without question, the matters that gave rise to Plaintiff's disciplinary proceedings are a matter of public concern, and Plaintiff does not appear to contest that. Further, as noted *supra*, Plaintiff admits that the text messages between him and the student were true and accurate, albeit taken out of context. In addition, Plaintiff does not dispute that *the student* made the complaint alleging that Plaintiff made her feel uncomfortable because of inappropriate conduct. Plaintiff has not alleged Defendant acted with actual malice, and Plaintiff has not alleged that the circumstances of his suspension were non-privileged.

Though Plaintiff asserts that the female student's statements were false, and therefore Defendant reported untruths, the undisputed fact remains that the student reported the inappropriate conduct, which was corroborated by other students and staff, including the "true and

13

accurate" text messages between Plaintiff and the student.[8] Of further interest here is that Plaintiff has not alleged that Defendant failed to act in good faith when it initially suspended him as a result of the student's complaint – indeed, Plaintiff "understands" why Defendant had to suspend him. See Crump, 173 W. Va. at 699. Even assuming *arguendo*, that the Defendant acted upon the student's false statements, there is simply no evidence or allegation that Defendant had any notion that the student's statements were untrue prior to initiating disciplinary action against Plaintiff.[9]

### Intentional Infliction of Emotional Distress and Workers' Compensation Immunity

Finally, with respect to Plaintiff's cursory claim for intentional infliction of emotional distress, notwithstanding the clear exemption provision set forth by the West Virginia Workers' Compensation Act that shields employers from liability for common-law tort claims[10], Plaintiff only recently alleges that Defendant acted with "deliberate intention" (ECF No. 32 at 6) in an attempt to circumvent immunity provided under the Act. Regardless, Plaintiff has provided insufficient supporting facts to substantiate this particular claim.[11] For instance, there is no

---

[8] To the extent that Plaintiff argues that the student's statements were determined to be false because the Department of Health and Human Services had found that no sexual assault or abuse occurred, this argument is of no moment and lacks merit, as even Plaintiff concedes that "sexual assault and inappropriate conduct are different" (ECF No. 32 at 5).

[9] It is noteworthy that in the Hugger matter, the student therein admitted only after the defendant did some investigation into the student's allegations and after the defendant's initial publication that her statements were false; subsequently, the defendant issued an apologizing press release. Nevertheless, despite this development, the Fourth Circuit found the plaintiff's claims of defamation still fail as a matter of law due to lack of actual malice. 94 Fed.Appx. at 167.

[10] See W. Va. Code § 23-2-6, which provides as follows:

> Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions with this chapter.

[11] In order to succeed on a claim for intentional infliction of emotional distress in West Virginia, a plaintiff must prove the following elements: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the

allegation or showing that Defendant's conduct was atrocious or intolerable; there is no showing that Plaintiff's alleged emotional distress was a result of Defendant's actions, but more likely, was the result of Plaintiff's own inappropriate conduct with the female student. In any event, it follows that where Plaintiff has failed to satisfy his burden that Defendant acted with malice in his defamation claim, Plaintiff has likewise failed to satisfy his burden that Defendant had either intentionally or recklessly caused him severe emotional distress. See, e.g., Hatfill v. The New York Times Co., 532 F.3d 312, 326 (4th Cir. 2008). Plaintiff merely states that he only wants an opportunity to clear his name against the false allegations made against him – which he intends to do via the student's testimony at trial. This approach simply does not equate to a legally viable claim for intentional infliction of emotional distress.

## PROPOSAL AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant is entitled to summary dismissal of this matter. Even given the facts reviewed in light most favorable to Plaintiff, there are no questions of material fact as to whether he was suspended as the result of racial discrimination. Further, Plaintiff has failed to satisfy the elements required to succeed in his claims related to defamation or intentional infliction of emotional distress.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT _Defendant McDowell County Board of Education's Motion for Summary Judgment_** (ECF No. 28). As a

---

actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. See Travis v. Alcon Laboratories, Inc., 202 W. Va. 369, 504 S.E.2d 419 (1998).

result of the recommendation for summary dismissal, the undersigned would further **RECOMMEND** that Defendant's ***Motion to Dismiss*** (ECF No. 10) and ***Motion*** to the extent that it asks for an Order (1) Deeming Defendant's First Set of Requests for Admission to Plaintiff Admitted and (2) Striking Plaintiff's Responses (of December 31, 2020) (ECF No. 19) be **DENIED** as **MOOT**.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on any opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to the *pro se* Plaintiff and to counsel of record.

ENTERED: May 3, 2021.



Omar J. Aboulhosn
United States Magistrate Judge